# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 96 C 3773 | **DATE** | 8/3/2004 |
| **CASE TITLE** | Cremin, et al. vs. Merrill Lynch | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing held.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Plaintiffs' request for reversal of the Special Master's May 28, 2004 order [356-1] is granted. Claimant Rosalie Field's petition for a declaratory judgment [367-1] and motion to intervene [367-2] regarding the order of the special master [367-3] is denied as moot. Claimant Judy Weil's brief in support of class counsel's request, which we construe as a motion to intervene is denied as moot. Parties to file a joint status report on or before 10/15/04.

(11) ■ [For further detail see order attached to the original minute order.]

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARY BETH CREMIN, NANCY THOMAS, )
ANNE KASPAR, SONIA INGRAM, ALICE )
MOSS, LINDA CONTI, ANNE MARIE )
KEARNEY and ANGELA COVO, on behalf )
of themselves and all others similarly situated, ) No. 96 C 3773
)
Plaintiffs, ) Judge Ruben Castillo
)
v. )
)
MERRILL LYNCH, PIERCE, FENNER & )
SMITH, INC., ) **DOCKETED**
)
Defendant. ) AUG 0 4 2004

## MEMORANDUM OPINION AND ORDER

This lawsuit is a good example of the benefits of class action litigation. In 1996 Plaintiffs filed a class-action lawsuit challenging Defendant's alleged gender discrimination against its female Financial Consultants ("FCs"). *See Cremin v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 957 F. Supp. 1460 (N.D. Ill. 1997) (granting certain defendants' motion to dismiss declaratory judgment claim). In 1998 the parties entered into a settlement (the "Stipulation") that impacted over 900 current and former Merrill Lynch female employees. The Stipulation eliminated the practice of mandatory arbitration for discrimination claims at Merrill Lynch and instead permitted the women to pursue their claims before neutral mediators and arbitrators. This alternative dispute resolution process, called the Claims Resolution Process ("CRP"), consisted of two phases. In the first phase, the Stipulation required the presentation and recording of class-wide evidence in a Statistical

1

Evidence Hearing ("SEH"), which would be made available to individual claimants in their phase-two TSH arbitration proceedings. Although the Stipulation required that the statistical evidence be presented on an issue-by-issue basis, the parties later agreed that for the sake of efficiency, statistical evidence would be presented on a witness-by-witness basis.[1] In phase two, claimants were to present their individual claims to a Neutral or panel of three Neutrals in binding TSH arbitration.

Throughout the pendency of this litigation the parties have cooperated on the resolution of the discrimination claims. Over ninety-six percent of all claims have been resolved in this case as of July 30, 2004. And the one belated objection to the Stipulation was rejected by this Court and the Seventh Circuit. *See Ingram v. Merrill Lynch, Price Fenner & Smith, Inc.*, 371 F.3d 950 (7th Cir. 2004).

In April 2004 the first TSH panel issued a decision in the Hydie Sumner case. After receiving all of the statistical evidence culled at the SEH, the *Sumner* Panel ultimately found that Merrill Lynch had engaged in a pattern or practice of class-wide discrimination and

---

[1] Section 7.15(6) of the Stipulation provides in pertinent part:
This Statistical Evidence Hearing will be videotaped so that relevant portions thereof can be shown to the Neutral(s) in individual cases in lieu of any other presentation of class-wide statistical evidence in individual cases. At the [SEH], Class Counsel will first present Claimants' statistical evidence and expert testimony and arguments with respect thereto, and then the Firm will present its rebuttal statistical evidence, expert testimony and arguments. Each party shall have full rights of cross examination and rebuttal. The presentation at the [SEH] shall be made one issue at a time so that a separate videotape can be prepared for each issue. Each videotape shall include all evidence, testimony and arguments concerning the issue. Nothing in this paragraph shall prevent Claimants from presenting additional statistical evidence developed pursuant to Paragraph 7.15(1).

awarded Ms. Sumner liquidated damages under the Equal Pay Act and punitive damages totaling $500,000. Specifically, the *Sumner* Panel found:

> [T]he record clearly and convincingly supports Sumner's allegations of a pattern and practice of gender discrimination adversely affecting the pay of female FC's. The class-wide statistical evidence demonstrates gross disparities in earnings between male and female FC's . . .
>
> \* \* \*
>
> Having considered the class-wide statistical evidence and reports and testimony of experts, the panel finds that these statistical significant disparities in earnings between male and female FC's are not explained by non-discriminatory factors. Rather, the Panel finds that the disparate earnings of females and males were the result of Merrill's discriminatory practices including, but not limited to an unequal distribution of accounts to female FC's . . . and a male-dominated organizational structure at Merrill which created an environment in which managerial discretion was influenced by gender stereotypes adversely affecting female FC's.

(R. 356, Pls.' Mot., Ex. B at 6-7.)

As a result of the *Sumner* Panel's decision, Merrill Lynch submitted a request to the Special Master, who was designated by the parties to address issues related to discovery, collection of evidence and other "Class-Wide Issues,"[2] seeking an order holding that a single Neutral or Panel's findings with respect to pattern-or-practice discrimination claims could not be used with preclusive effect in subsequent arbitrations. Essentially, Merrill Lynch sought an order barring any future Panel from using the *Sumner* decision in any way. The Special Master granted Merrill Lynch's request and enjoined every lawyer representing a claimant in the CRP from arguing that the *Sumner* decision should have preclusive effect. The Special Master also barred every CRP Panel from relying on the *Sumner* decision or any

---

[2] A "Class-Wide Issue" is defined in the Stipulation as "an issue(s) concerning the meaning of a provision of the Settlement Stipulation or the CRP or a discovery issue(s) that affects Class Members generally." (R. 96, Stipulation Definitions at ¶ 12.)

other CRP Panel decision "in whole or in part" when rendering its own decision. (*Id.*, Ex A, Special Master Order at 3.) Finally, the Special Master construed the Stipulation as contemplating that each CRP Neutral and Panel would act independently; therefore, the Special Master ruled that no decision of a CRP Panel with respect to the presence or absence of a pattern or practice of discrimination by Merrill Lynch would have *res judicata* or collateral estoppel effect in any subsequent TSH.

Presently before the Court is Class Counsel's[3] request for review and reversal of the Special Master's May 28, 2004 order prohibiting the findings of any Third Stage Hearing ("TSH") Panel or Neutral regarding the presence or absence of a pattern or practice of discrimination at Merrill Lynch from having preclusive effect in subsequent TSH proceedings. For the following reasons we grant Class Counsel's request and hold that the parties may argue to their respective TSH panel that determinations made in a prior hearing should be accorded *res judicata* or collateral estoppel effect. (R. 356-1.)

## ANALYSIS

Class counsel now petitions this Court to reverse the Special Master's ruling on three grounds. First, the Class claims that the Special Master exceeded his authority by expansively interpreting Merrill Lynch's request as a "Class-Wide Issue" and then granting the injunctive relief Defendant sought. Instead, the Class claims that this issue is solely within the province of this Court's jurisdiction outlined in Section 16.9 of the Stipulation. Second, the Class argues that the Special Master's decision requires future panels to

---

[3] Two individual claimants also have submitted motions and briefs in support of Class Counsel's request. (*See* R. 362, Br. of Judy Weil; R. 367, Pet. of R. Fields for Declaratory J. and Mot. to Intervene.) Given our disposition of the case we deny these motions as moot.

4

abrogate their duty to "apply applicable law" as required by Section 7.11(4) of the Stipulation by forcing them to ignore their respective circuit's law on the application of preclusion doctrines to arbitration decisions. Finally, the Class points out that many courts have held that arbitration findings are to be given preclusive effect in later proceedings. But the Class does not seek as relief a holding that the *Sumner* Panel decision is entitled to preclusive effect in all subsequent proceedings. Instead Plaintiffs simply seek the latitude to present the collateral estoppel issues to future TSH Panels or Neutrals to allow them to decide whether preclusion is appropriate under the applicable law of the circuit within which the Panel or Neutral sits. In response, Merrill Lynch claims that the Stipulation does not permit this Court's review of the Special Master's Order and that, in any event, the Special Master's decision correctly held that the decision of one Panel or Neutral could not have preclusive effect in subsequent hearings. We disagree.

First, although it is true that the Special Master's decision on "Class-Wide Issues" is not subject to appeal or review, (*see* R. 96, Stipulation, ¶ 7.16), we conclude that we have the authority to resolve this dispute pursuant to the general provision of Section 16.9 of the Stipulation. That section broadly provides that "[i]n the event of any dispute or disagreement with respect to the meaning, effect or interpretation of this Settlement Stipulation . . . the Parties agree that such dispute will be resolved and adjudicated only in and by the District Court, unless otherwise provided in this [Stipulation]." We further conclude that the definition of Class-Wide Issues when taken in the context of the delineated duties of the Special Master establishes that the Special Master overstepped his jurisdiction in prohibiting the parties from invoking earlier Panel decisions for preclusive effect. That is,

the Stipulation defines the Special Master as a person designated by the parties to address issues concerning discovery, joinder, witnesses, the use of medical evidence and medical examinations, appeals from a Neutral's attempt to curtail evidence at a TSH, as well as to preside over the SEH. (R. 96, Stipulation Definitions ¶ 44.) Each of these discrete duties are focused on remedying discovery disputes and other procedural irregularities as they arise and ensuring the orderly and efficient progress of the hearings. To say, however, that the Special Master's authority to discern and decide "Class-Wide Issues" extends to prohibiting future TSH Panels or Neutrals from considering the preclusive impact, if any, of prior Panel decisions simply reaches too far. In short, the Special Master exceeded his authority in his May 28, 2004 ruling; therefore we must reverse his decision. *See, e.g.,* Fed. R. Civ. P. 53(a)(1)(A) (noting that Special Master may be appointed only to perform duties consented to by the parties).

We cannot sanction Defendant's attempt to avoid the application of long-standing preclusion doctrines through a stilted reading of the Stipulation and this Court's jurisdiction as well as an overly expansive interpretation of the Special Master's duties. Indeed, Defendant's position flies in the face of not only those doctrines, but also the spirit of the Stipulation itself. One obvious goal of the SEH and of the CRP as a whole is efficiency and consistency in the presentation of evidence. Similarly two goals of preclusion are efficiency and consistency. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979) (noting that collateral estoppel "has the dual purpose of protecting litigants form the burden of relitigating an identical issue with the same party . . . and of promoting judicial economy by preventing needless litigation."); *see also Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 467

6

(1982) (noting the importance of "conclusive resolution of disputes" and that the invocation of *res judicata* and collateral estoppel "relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication") (internal quotation omitted).

It appears on the record before us that the requirements for the application of collateral estoppel have been satisfied and, at least in our circuit, collateral estoppel may attach to arbitration awards, although Plaintiffs are correct that this is a question for the Panel or Neutral to decide. *See IDS Life Ins. Co. v. Royal Alliance Assocs., Inc.*, 266 F.3d 645, 651 (7th Cir. 2001) (noting that *res judicata* and collateral estoppel apply to arbitration awards as a matter of contract); *Chi. Truck Drivers, Helpers and Warehouse Union Pension Fund v. Century Motor Freight, Inc.*, 125 F.3d 526, 530 (7th Cir. 1997) (outlining requirements of collateral estoppel); *Local Union No. 370 of Int'l Union of Operating Eng'rs v. Morrison-Knudsen Co.*, 786 F.2d 1356, 1358 (9th Cir. 1986) (stating that "even matters that are 'extrinsic' to the process of interpreting the collective bargaining agreement, such as defenses of collateral estoppel and equitable estoppel," are for the arbitrators to decide) (internal quotation omitted).

In the end, the facts of this case are what they are; if, as the *Sumner* Panel found, the "record clearly and convincingly supports Sumner's allegations of a pattern and practice of gender discrimination," Merrill Lynch cannot hide behind a stilted reading of the Stipulation and the Special Master's duties to avoid this result. Similarly, the Special Master acted outside his authority by casting aside long-standing doctrines of preclusion and forcing future TSH Panels or Neutrals to operate in a black hole of information that requires re-

7

litigation of well-established facts. If a Panel or Neutral decides that the governing law requires it to give preclusive effect to a prior decision, then it should be entitled to make that decision and to do so.

## CONCLUSION

For the foregoing reasons, we grant Plaintiffs' request for reversal of the Special Master's May 28, 2004 order. (R. 356-1.) We deny as moot claimant Rosalie Fields' Petition for a Declaratory Judgment and Motion to Intervene, (R. 367), and similarly deny as moot Judy Weil's Brief in Support of Class Counsel's request, which we construe as a motion to intervene, (R. 362).

ENTERED:

_____
Judge Ruben Castillo
United States District Court

Dated: August 3, 2004