## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| MARYBETH CREMIN, NANCY THOMAS, ANNE KASPAR, SONIA INGRAM, ALICE MOSS, LINDA CONTI, ANNE MARIE KEARNEY and ANGELA COVO, on behalf of themselves and others similarly situated, | ) ) ) ) ) ) ) | No. 96 C 3773 <br><br> Judge Ruben Castillo |
| v. | ) ) | |
| MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Ten years ago, a group of female employees ("Plaintiffs") of Merrill Lynch, Pierce,

Fenner & Smith, Inc. ("Merrill Lynch") filed a putative class action lawsuit against Merrill

Lynch, alleging that Merrill Lynch discriminated against its female employees on the basis of

gender, in violation of Title VII, 42 U.S.C. 2000e, *et seq.*; the Equal Pay Act ("EPA"), 29 U.S.C.

§ 206(d); and various state anti-discrimination laws. On September 2, 1998, this Court approved

the parties' Stipulation of Settlement ("Settlement"), which sets out procedures to provide a "fair,

efficient and expeditious resolution of all Class Claims asserted by the putative plaintiff class."

(R. 112, Settlement ¶ 1.12.) For purposes of the Settlement, the parties agreed to the certification

of a class ("Class") consisting of all women who were employed in Merrill Lynch's domestic

Private Client Group between January 1, 1994 and June 18, 1998, the date this Court entered the

Preliminary Approval order of the Settlement. (*Id.* ¶ 5.1(a).) The Settlement set out a Claims

Resolution Process ("CRP"). In the first phase of the CRP, the Settlement required the

presentation and recording of class-wide evidence in a Statistical Evidence Hearing, and in phase

two, claimants were to present their individual claims to a panel of three Neutrals in binding Third Stage Hearing arbitration ("TSH"). (*Id.* ¶ 7.11.) The Neutrals were endowed with the authority to grant any relief they deemed appropriate to the same extent a court would have authority to grant relief as to any eligible claims, including individual remedial and equitable relief. (*Id.* ¶ 7.11(4).)

On September 28, 2005, the TSH panel for claimant Sonia Ingram ("Panel"), a former financial consultant ("FC") at the New York Grand Central office of Merrill Lynch, denied her all relief. (R. 413, Ex. 1 ("Panel Order").) Ingram timely filed a petition to vacate the arbitration award ("Petition") (R. 413), and Merrill Lynch responded with a brief in opposition to Ingram's Petition and a motion to confirm the arbitration award. (R. 424, 426.) For the following reasons, Ingram's Petition is denied, and Merrill Lynch's motion to confirm the arbitration award is denied as moot.

## STANDARD OF REVIEW[1]

Ingram asks this Court to vacate the Panel's award on one of the grounds provided in the Settlement: that the Neutrals "exceeded their powers as set forth in the Settlement Agreement or so imperfectly executed those powers that a mutual, final and definite award upon the subject matter submitted was not made." (R. 112, Settlement ¶ 7.11(10)(iv).) This language is almost identical to the grounds set forth for vacating an arbitration award under the Federal Arbitration Act, 9 U.S.C.A. § 10 (a)(4) ("FAA"): "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter

---

[1]Neither party addresses whether this Court should follow the law of the Seventh Circuit or that of the Second Circuit, where Ingram worked. The Court need not decide this issue as the outcome of Ingram's Petition would be the same under the law of either Circuit.

submitted was not made." Merrill Lynch argues that this Court should apply the FAA's narrow

standard for review of arbitration awards. Ingram, however, claims that language in the

Settlement requiring the Panel to apply the governing law unless expressly modified in the

Settlement effectively narrowed the Panel's authority and, accordingly, broadened this Court's

ability to review the arbitration award. (R. 112, Settlement ¶ 7.11(4).)

Ingram's attempt to distinguish the Settlement from the FAA is without merit. The

provision in the Settlement requiring the Neutrals to apply the governing law unless otherwise

specified in no way limited the Neutrals' power of resolution.[2] Arbitrators are expected to follow

applicable law unless stated otherwise in the arbitration agreement. In fact, appellate courts

interpreting when an arbitral award may be vacated under the FAA presume that arbitrators must

attempt to follow the governing law or the law specified in the contract. *See, e.g., Wallace v.*

*Buttar*, 378 F.3d 182, 189 (2d Cir. 2004) (arbitral award may be vacated for manifest disregard of

the law only if arbitrators knew of governing legal principle yet refused to apply it or ignored it

altogether, and the law was well defined, explicit, and clearly applicable to the case); *George*

*Watts & Son v. Tiffany & Co.*, 248 F.3d 577 (7th Cir.2001) (manifest disregard of the law applies

where arbitral award either requires the parties to violate the law or does not adhere to the legal

principles specified by contract, and hence [is] unenforceable under the FAA).

Thus, this Court will apply the appropriate standard of review under the FAA. "It is well

established that courts must grant an arbitration panel's decision great deference. A party

---

[2]Ingram does not explain how this Court's scope of review would change under her reading of the Settlement, but it seems she desires this Court to take any error of law committed by the Panel—no matter how small—as grounds for vacation of the arbitration award. Not only is this not the standard, but as explained below, Ingram has not shown an erroneous application of the law.

3

petitioning a federal court to vacate an arbitral award bears the heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law." *Buttar*, 378 F.3d at 189 (citations and quotations omitted). Under the FAA, "[t]he requirements of finality and definiteness are ones more of form than of substance. They must not be confused with whether the arbitrators' award was correct or even reasonable, since neither error nor clear error nor even gross error is a ground for vacating an award." *IDS Life Ins. Co. v. Royal Alliance Assocs., Inc.*, 266 F.3d 645, 650 (7th Cir. 2001). "[I]f the district judge is satisfied that the arbitrators resolved the entire dispute and can figure out what that resolution is, he must confirm the award." *IDS Life*, 266 F.3d at 650-51.

The district court may, however, vacate a panel's decision if the panel committed a "manifest disregard of the law." "[M]anifest disregard of law as applied to review of an arbitral award is a severely limited doctrine." *Buttar*, 378 F.3d at 189 (quotations and citations omitted). It is "a doctrine of last resort—its use is limited only to those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent, but where none of the provisions of the FAA apply." *Id.* (quotations and citations omitted).

## ANALYSIS

Ingram argues that the Panel's decision should be vacated because it: (1) violated the express terms of the Settlement; (2) failed to render a decision on Ingram's EPA claim and corresponding New York Human Rights Act claim; and (3) misapplied the law.

## I.      Violation of Express Terms of the Settlement

The Settlement requires that TSH panels "issue a separate written award with respect to each CRP Claim." (R. 112, Settlement ¶ 7.11(9).) In this case, after a seventeen-page discussion

4

of Ingram's claims and the relevant facts, the Panel ruled that: "[t]he claims of the Claimant, Sonia Annella Ingram, are denied in their entirety." (Panel Order at 17.) Although the Panel did not repeat its reference to the EPA as one of the statutory bases of her discrimination in compensation claim, it also did not repeat its reference to Title VII as another statutory basis of that claim. *Id.* Ingram claims that this ruling failed to constitute "a separate written award with respect to each CRP Claim" such that this Court should vacate the arbitration award. Neither the FAA nor the Settlement, however, require arbitrators to explain the basis or reasons for their awards. *See Eljer Mfg., Inc. v. Kowin Dev. Corp.*, 14 F.3d 1250, 1254 (7th Cir. 1994).

Apparently, Ingram interprets the Settlement language as requiring the Panel to itemize each claim with a corresponding denial and award of zero. The Panel identified and itemized each of Ingram's claims at the beginning of its order and then went through multiple pages of painstaking facts demonstrating its reasons for ultimately denying all of Ingram's claims. As the ultimate award was zero as to each of Ingram's claims, the Panel's award was sufficiently definite and specific as to each of Ingram's claims. The Panel's award therefore does not violate the express terms of the Settlement.

## II. Failure to Render a Decision

Ingram next argues that the Panel's award should be vacated because the Neutrals "exceeded their powers as set forth in the Settlement Agreement or so imperfectly executed those powers that a mutual, final and definite award upon" Ingram's EPA claim and corresponding state claim was not made. (R. 112, Settlement ¶ 7.11(10)(iv).)

## A. Failure to Render a Decision as to Whether Merrill Engaged in a Class-Wide Pattern or Practice of Discrimination

Specifically, Ingram claims the Panel failed to reach a mutual, final and definite award upon her Equal Protection Act ("EPA") claim and corresponding state claim by failing to render a decision regarding: (a) whether Merrill engaged in a Class-wide pattern or practice of discrimination based on the Panel's own review of the class-wide evidence or upon the collateral estoppel effect of a decision by another Third Stage Hearing panel, and (b) the merits of Ingram's Equal Pay Act claim. The Panel determined that it was not necessary to rule on Ingram's pattern or practice claim because: (1) Merrill Lynch accepted the burden of going forward and the burden of persuasion with respect to Class claims of discrimination in pay and promotion; and (2) the result in the case would be same whether or not a finding of a pattern or practice of gender discrimination was made. (Panel Order at 7.)

### 1. Panel's own review of the class-wide evidence

Merrill Lynch accepted the burden of going forward on the class claims in Paragraph 7.11(8)(e) of the Settlement. In addition, Merrill Lynch agreed in the TSH to accept the burden of persuasion with respect to Class Claims of discrimination in pay and promotion. (Panel Order at 7.) The Panel determined that the practical effect of this was to create a rebuttable presumption in Ingram's favor that "specific decisions regarding distributions of accounts and application of the compensation system to Claimant were the product of illegal gender discrimination." (Panel Order at 11.) The Panel further determined that Merrill Lynch bears the burden of persuasion that compensation decisions and practices affecting Claimant individually were based upon lawful reasons. (Panel Order at 8.) Ultimately, after considering detailed

6

evidence specific to Ingram and the Grand Central office of Merrill Lynch, the Panel held that "Merrill Lynch rebutted any presumption of discrimination with respect to compensation of Claimant." (Panel Order at 11.)

Ingram claims that by failing to rule on the pattern or practice issue, the Panel "so imperfectly executed [its] powers that a mutual, final and definite award" upon Ingram's EPA claim was not made. (Settlement ¶ 7.11(10)(iv).) The Court disagrees. The Panel's decision not to rule on whether Merrill Lynch had a class-wide policy or practice of discrimination in compensation was a legal determination that affected—but did not preclude—the Panel's final and definite ruling denying Ingram's EPA claim. Even if the Panel erred in finding that Merrill Lynch's acceptance of the burden of persuasion obviated the need to find a pattern or practice of discrimination, that would not justify vacating the arbitration award, because the arbitrators' failure to understand or apply the law is not grounds to vacate an arbitration award. *See Westerbeke*, 304 F.3d at 208-09; *IDS Life*, 266 F.3d at 650.

### 2. Collateral estoppel effect of a decision by the Sumner TSH panel

"For the same reasons," the Panel declined to reach the issue of whether it should give collateral estoppel effect to the April 19, 2004 panel decision of a separate claimant, Hydie Sumner, which found a pattern and practice of gender discrimination in compensation at Merrill Lynch. The Panel explained that since "Merrill Lynch has accepted both the burden of going forward and the burden of persuasion on the Class Claims, it makes it unnecessary to decide whether the Sumner panel's finding of a pattern and practice of discrimination should bind this Panel." (Panel Order at 7.)

Ingram argues that the Panel's failure to rule on its collateral estoppel claim "so

7

imperfectly executed those powers that a mutual, final and definite award" was not made. Ingram claims that the Panel's failure to rule (1) was erroneous under the law; and (2) violated what she perceived as this Court's order mandating that the Panel affirmatively rule on the collateral estoppel issue. As explained above, however, a mere error of law is not sufficient grounds for vacating an arbitration award. In addition, Ingram does not argue, and we do not find, that the decision was in "manifest disregard" of the law.

Ingram's interpretation of previous rulings by this Court's is also flawed. Contrary to Ingram's claims, on March 1, 2005, this Court did not rule that the Panel must affirmatively decide whether or not to apply collateral estoppel to the Sumner panel decision finding a class-wide pattern or practice of discrimination by Merrill. Rather, after a hearing on March 1, 2005, this Court denied Class counsel's motion to apply collateral estoppel to the Sumner panel's finding of a class-wide pattern or practice of gender discrimination by Merrill Lynch. In so holding, this Court relied on its August 3, 2004 memorandum opinion and order, where this Court held that "the parties may argue to their respective TSH (Third Stage Hearing) panel that determinations made in a prior hearing should be accorded res judicata or collateral estoppel effect." (R. 372, Mem. Op. and Order at 4.) This Court's oral ruling on March 1, 2005, "that it's up to the panels to decide whether or not to give preclusive effect to the Sumner decision," and "that ultimately has to be a decision that is made by each and every neutral," simply reaffirmed this Court's earlier written opinion that the parties *may argue* to their respective panel that determinations made in a prior hearing should be accorded collateral estoppel effect. (R. 413, Petition, Ex. 4, 3/1/05 Tr. at 15-16.) The parties so argued, and in the Panel's ruling on Ingram's claim, the Panel found that the issue of collateral estoppel was moot, as Ingram's claims would

8

fail even if she had proved pattern or practice and Merrill Lynch had accepted the burden of persuasion. (Panel Order at 7.)

## B.    Failure to Render a Decision on the Merits of Ingram's Equal Pay Act Claim

Ingram asserts that the Panel "ignored" her EPA claim. (R. 413, Petition at 11.)  While the Panel did not refer to Ingram's EPA claim by name or specifically review the legal elements and affirmative defenses of an EPA claim, the Panel discussed in detail Ingram's claims of discrimination in compensation and then rendered a decision on Ingram's Equal Pay Act claim, denying it in its entirety. In reaching its decision that "there was no showing that Claimant was the victim of discrimination in compensation," the Panel went through an exhaustive list of facts applicable to Ingram and the Grand Central office of Merrill Lynch, where Ingram worked as a Financial Consultant. (Panel Order at 11.)

With respect to Ingram, the Panel found that:

- "Claimant was not a successful producer during her tenure at Merrill Lynch by any standard of measurement. Between 1994 and 1996, she had the lowest volume of assets under management of any FC in the office with her LOS ["Length of Service"], and during some periods her assets and production were the worst in the office regardless of LOS. (Tr. 169-174, R-5-9)." (Panel Order at 3.)

- "Claimant acknowledged that her 1994 performance was poor as measured by the type of tracking records Merrill Lynch maintained. (Tr. 894.) She admitted that she managed only $3.1 million in assets at the end of 1994 versus the standard for financial consultants at her level of $14 million; she also conceded that her draw was reduced in 1995 due to her poor production in 1994. (Tr. 896-900). Claimant's assets by May 1996 were $5 million versus the minimum standard for her LOS of $20 million and the goal of $39 million. (Tr. 1155)." (*Id.* at 3 n.3.)

- "It is clear from the record that Claimant was an extremely poor performer, whether her performance is compared to the male FCs or to the female FCs in that office, and her performance adversely affected her compensation." (*Id.* at 9.)

- Ingram's performance "was consistently and dramatically below others in the office . . .

9

both male and females." (*Id.* at 11.)

- Ingram's production and asset growth were "far below standards" during 1994 and 1995 and "declining substantially" months before her discharge in 1996. (*Id.* at 13.)

- Merrill Lynch did not retain any male FC with a similar or worse production record than Ingram's. (*Id.* at 14.)

In addition, the Panel discussed the lack of evidence Ingram raised as to the alleged

discrimination in compensation in the Grand Central office, including factors Ingram claimed

affected her compensation such as account distribution, assignment of administrative support,

and training and business development opportunities.

- "Claimant offered no expert testimony on the pattern in the Grand Central office, but argued from Dr. Siskin's tables that the average distributions to male brokers in the Claimant's LOS level for each of the years from 1994 to 1996 favored males. (Tr. 980-986.)" (*Id.* at 8.)

- "Claimant could not identify any specific clients represented by male financial consultants and had no knowledge of their business assets or how the assets were developed. Claimant did testify that Andy Ford, a very high producing male financial consultant, had a special relationship with a banking client, but acknowledged that he had worked for the bank prior to joining Respondent. (Tr. 1002-1003.)" (*Id.* at 9.)

- "The record fails to establish that gender-based discrimination in account distributions adversely affected the compensation of female FCs in the Grand Central Office or adversely affected Claimant." (*Id.*)

- "Moreover, apart from Claimant's bald assertions, there was no evidence of any other indicia of discrimination or disparate treatment in the office, in categories such as administrative support, assignment of office space, sales incentives or other support, the quality of referrals, teams and partnerships, or training and business development opportunities." (*Id.*)

- Claimant did not receive a one-on-one assistant because she never reached anywhere near the required $1 million to qualify. (*Id.*)

- Claimant was not allowed to attend Merrill Lynch's advanced training program because she did not have the required Series 65 license, and she did not attend the Princeton advanced training program because she never achieved top production quintiles. (Tr.

809-12.) (*Id.* at 9-10.)

- "The record provides no evidence that Respondent discouraged Claimant's efforts [to develop business with Native American Tribal Nations] for any reasons other than its belief that Leonard [a principal in a company engaged in developing financing for them] truly was a scam artist, and because the firm had made a business decision not to finance Tribal Nations projects." (*Id.* at 10.)

- After a discussion, the Panel also found that "There is no evidence that Respondent's business decision not to follow upon Claimant's China leads was motivated, in whole or in part, by her gender." (*Id.* at 11.)

As a result, the Panel found that "there was no showing that Claimant was the victim of discrimination in compensation," and that "Merrill Lynch rebutted any presumption of discrimination with respect to compensation of Claimant." (*Id.*) The Panel reiterated that its decision would remain the same even if the Panel found by collateral estoppel or its own independent review, that there was proof of a pattern and practice of discrimination on the basis of sex in the application of Respondent's compensation program. (*Id.*)

As this Court has found that the Panel did indeed reach the merits of Ingram's Equal Pay Act claim, the remaining issue is whether the Panel's legal decision to deny Ingram's EPA claim on the basis of facts applicable specifically to her and to the Grand Central office where she worked, demonstrated a "manifest disregard for the law," since a mere error of law is not sufficient to vacate an arbitration award.

## III. Misapplication of the Law

While "a mere error in the law" or failure "to understand or apply the law" is not sufficient to warrant vacation of an arbitration award, a district court may vacate an arbitration award if the arbitrators exhibited a "manifest disregard for the law." *Butler Mfg. Co. v. United Steelworkers of Am.*, 336 F.3d 629, 636 (7th Cir. 2003); *Westerbeke Corp. v. Daihatsu Motor*

11

*Co., Ltd.*, 304 F.3d 200, 208-09 (2d Cir. 2002). While Ingram does not contend that the Panel's decision in this case showed a "manifest disregard for the law," she argues that the Panel wrongly decided her Equal Pay Act claim under the law and its decision therefore must be vacated. Since a mere error in the law is not sufficient to vacate an arbitration award, the Court will discuss whether the Panel showed manifest disregard for the law.

In the Seventh Circuit, "an arbitral decision is in manifest disregard of the law only when the arbitrator's award actually orders the parties to violate the law." *Butler Mfg.*, 336 F.3d at 636 (citations omitted). In the Second Circuit, to demonstrate that an arbitrator exhibited a manifest disregard for the law, the petitioner must show that the "governing law alleged to have been ignored by the arbitrators [was] well defined, explicit, and clearly applicable," and that the arbitrator "appreciate[d] the existence of a clearly governing legal principle but decide[d] to ignore or pay no attention to it." *Westerbeke Corp.*, 304 F.3d at 208-09.

## A. The Equal Pay Act

In this case, the Panel did not ignore the EPA, and, indeed, cases interpreting the EPA are anything but "well defined, explicit, and clearly applicable." The EPA "prohibits employers from discriminating among employees on the basis of sex by paying higher wages to employees of the opposite sex for equal work." *Ryduchowski v. Port Auth. of N.Y.*, 203 F.3d 135, 142 (2d Cir. 2000). To establish a prima facie claim of an EPA violation, the plaintiff must provide evidence that: (1) the employer pays different wages to employees of the opposite sex; (2) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (3) the jobs are performed under similar working conditions. *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974). As explained above, the Panel found that because Merrill Lynch had

12

accepted the burden of going forward and the burden of persuasion with respect to Class claims

of discrimination in pay, Ingram did not need to make out her prima facie case. (*See* Panel Order

at 7; R. 112, Settlement ¶ 7.11(8)(e).) To meet its burden of persuasion, Merrill Lynch was

required to show that the wage disparity resulted from a bona fide: (1) seniority system; (2) merit

system; (3) system which measures earnings by quantity or quality of production; or (4)

differential based on any other factor than sex. *Corning Glass*, 417 U.S. at 195-97 (citing 29

U.S.C.A. § 206 (d)(1).) The EPA is a strict liability statute, meaning that an employer is

potentially subject to liability under the EPA without a showing of discriminatory intent. *See*

*Ryduchowski*, 203 F.3d at 142. *Varner v. Ill. State Univ.*, 226 F.3d 927, 932-33 (7th Cir. 2000).

Here, although the Panel acknowledged that "class-wide statistical evidence demonstrates

disparities in the earnings of males versus females," the Panel did not make a finding as to

whether Merrill Lynch perpetrated Class-wide discrimination in compensation, or whether a bona

fide job evaluation plan accounted for alleged Class-wide differences in pay between female and

male employees of Merrill Lynch. Instead, the Panel analyzed Ingram's individual job

performance and the specific environment at the Grand Central office where she worked to

determine whether the pay differential between Ingram and her colleagues at the Grand Central

office. The Panel determined that Ingram was not discriminated against on the basis of her

gender because Ingram's own poor performance caused the pay differential between her and male

employees in the Grand Central office of Merrill Lynch. (*Id.* at 7-11.) Furthermore, the Panel

noted that Merrill Lynch's expert opined that the pattern of account distributions was "directly

contrary" to the nationwide pattern shown in the class-wide evidence and that account

distributions in the Grand Central office actually favored female FCs. (*Id.* at 8.)

The Panel's legal analysis comports with Paragraph 7.11(8)(e) of the Settlement and the analysis of some appellate courts. This is so despite the fact that its analysis of whether the Ingram's job performance justified the pay differential leads to the question of Merrill Lynch's intent even though the EPA is a strict liability statute. The Settlement states that Merrill Lynch can rebut Class-wide statistical evidence of discrimination "with evidence related to the individual Claimant's case." (R. 112, Settlement ¶ 7.11(8)(e).) In addition, some appellate courts consider whether the employee's actual job performance justified the pay differential, rather than only considering whether a job-wide wage disparity between male and female employees was due to a bona fide job evaluation system. *See, e.g., Ryduchowski*, 203 F.3d at 144; *Ambrose v. Summit Polymers, Inc.*, No. 05-1048, 2006 WL 797939, at *5-6 (6th Cir. Mar. 24, 2006) (holding that because the plaintiff's skills had deteriorated during the period she claims she was paid less than a male employee who performed equal work, the plaintiff was not entitled to proceed further under the EPA).[3]

Ingram herself raises the issue of Merrill Lynch's intent by arguing that allegations of her poor performance were merely a pretext for gender discrimination in compensation, as shown by statistical evidence of a Class-wide pattern or practice of discrimination in compensation by

---

[3]Furthermore, both the parties and the Panel relied on *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 361-62 (1977), which sets out the two-phase framework for resolving Title VII class actions. (R. 413, Petition at 20-21; R. 426, Oppos. Br. at 9-10; Panel Order at 7.) In the first phase of the *Teamsters* framework, the plaintiff class must show that the employer maintained a policy or practice of unlawful discrimination. *Teamsters*, 431 U.S. at 360. In phase two, the individual class members must show that they personally suffered an adverse employment decision, and the employer has the opportunity to demonstrate that the individual was subjected to the adverse employment decision for lawful reasons. *Id.* at 362; *see also Franks v. Bowman Transp. Co., Inc.*, 424 U.S. 747 (1976); *Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 159-60 (2d Cir. 2001).

14

Merrill Lynch. (R. 413, Petition at 10-12.) Indeed, some appellate courts, including the Second Circuit, give plaintiffs an opportunity to counter an employer's affirmative defense by producing evidence that the reasons the employer advances for the disparity in pay are really a pretext for sex discrimination.[4] *See, e.g., Ryduchowski,* 203 F.3d at 142; *see also Irby v. Bittick,* 44 F.3d 949, 956 (11th Cir. 1995). Like the investigation into an employee-plaintiff's performance, this opportunity for rebuttal adds the element of an employer's intent to the otherwise strict liability EPA analysis. *See, e.g.,* Ellen M. Bowden, *Closing the Pay Gap: Redefining the Equal Pay Act's Fourth Affirmative Defense,* 27 Colum. J.L. & Soc. Probs. 225, 263-64 (1994).

Here, the Panel found that based on Ingram's sub-par performance, Merrill Lynch appropriately paid Ingram less than her male colleagues, and there was no pretext to Merrill Lynch's decisions affecting Ingram's pay. Thus, the Panel's analysis of Ingram's Equal Pay Act and corresponding state claim did not constitute a "manifest disregard for the law," or even an error of law, because it accords with the Second Circuit's and other appellate courts' interpretation of the EPA.

### B.  Collateral Estoppel

Ingram also argues that the Panel erred in declining to rule on her argument that the Panel should apply collateral estoppel to the Sumner panel decision, which found that Merrill Lynch had a pattern or practice of discrimination in compensation. The Sumner panel held that Merrill Lynch's affirmative defenses failed because Merrill Lynch's purportedly bona fide grid pay system was "tainted by pervasive discrimination which impaired the ability of women to earn

---

[4]In addition, the Seventh Circuit has opined that the Equal Pay Act is targeted at the same kind of intentional discrimination forbidden by the Constitution. *Varner,* 226 F.3d at 933-34.

equal pay for equal work." (R. 413, Petition Ex. 4, Sumner Award at 12.)

First, even if Ingram were correct that the Panel should have applied collateral estoppel to the Sumner panel decision, this error would not be grounds for vacating the arbitration award because, as explained above, the Panel properly determined that Ingram's claims would have been denied whether or not a Class-wide pattern or practice of discrimination was found. Second, the applicable facts and law in the Sumner case were arguably different than the facts at issue here, and under the doctrine of collateral estoppel, a decision is conclusive in a subsequent suit only when the court has previously decided an issue of fact or law necessary to its judgment. *Harrell v. U.S. Postal Serv.*, slip. op. No. 03-4204, 2006 WL 1171889, at *7 (7th Cir. May 4, 2006). The Sumner panel considered specific evidence of discrimination in Sumner's San Antonio office that did not exist in the Grand Central office, and the Sumner panel, unlike Ingram's Panel, based its EPA finding on Class-wide evidence, rather than evidence of Sumner's individual job performance. (R. 413, Petition Ex. 3, Sumner Award at 10.) Thus, collateral estoppel may not have applied because Sumner's and Ingram's TSH panels applied different facts and conflicting, but potentially valid, interpretations of EPA law.

## IV.    Confirmation of Arbitration Award

In conjunction with its brief in opposition to Ingram's petition to vacate the arbitration award, Merrill Lynch moved to confirm the arbitration award. The FAA dictates that:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award. .
> . .

9 U.S.C. § 9. Pursuant to the Settlement, this Court has retained jurisdiction "over all matters

16

related to this Settlement Stipulation for purposes of administering, effectuating and enforcing the Settlement and resolving any dispute under this Settlement Stipulation." (R. 112, Settlement ¶ 16.9.) Nowhere does the Settlement state that this Court shall enter a judgment upon the arbitration award. Nevertheless, the impact of this Court's denial of Ingram's petition to vacate the Panel's award is the same: Ingram's claims are denied in their entirety. Thus, this Court denies Merrill Lynch's motion to confirm the arbitration award as moot. (R. 426.)

## CONCLUSION

Sonia Ingram's Third Stage Hearing was the culmination of almost ten years of litigation. Almost eight years ago, Merrill Lynch and the Class worked together to create a very detailed and complicated Stipulation of Settlement, which set out the arbitration process for all of the plaintiffs in this case. Finally, on September 28, 2005, Ingram's TSH Panel issued its Final Decision and Order: seventeen pages of detailed facts supporting its decision to deny all of Ingram's claims. The Panel executed a mutual, final, and definite award upon Ingram's EPA claim, and committed no manifest disregard for the law. Thus, Ingram's petition to vacate the arbitration award and for other relief is denied. (R. 413-1.) Merrill Lynch's motion to confirm the arbitration award is denied as moot. (R. 426-1.)

ENTERED:

**Judge Ruben Castillo**
**United States District Court**

**Dated: May 25, 2006**